*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SCOTT WESTON ESCH,

        Defendant-Appellant.

UNPUBLISHED
May 15, 2026
12:45 PM

No. 374107
Ingham Circuit Court
LC No. 24-000105-FH

Before: KOROBKIN, P.J., and RIORDAN and MARIANI, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of second-degree arson, MCL 750.73(1), as well as his sentence of 45 to 240 months' imprisonment for that conviction. Defendant argues that there was insufficient evidence presented at trial to support his conviction, that the trial court reversibly erred by admitting certain testimony into evidence at trial, and that the trial court misscored offense variables (OVs) 1 and 2 when sentencing him. We affirm.

## I. BACKGROUND

In August 2023, defendant was living with his father and uncle in their Lansing home. Defendant slept in the basement, his father's bedroom was on the ground floor, and his uncle lived on the second floor. Defendant's father testified that, although the dynamics among the three were "[a]ll right for most of the time," there had been "some issues with calling the police for [defendant's] actions" and the father had initiated eviction proceedings to remove defendant from the home. Both the father and uncle testified that defendant was "[p]robably frustrated" with this development.

In the early morning hours of August 22, 2023, after the decision had been made to evict him, defendant woke up his father and uncle and alerted them to a fire in the basement. The father and uncle each tried to douse the flames, and the father could see that the smoke was coming from a piece of furniture in a corner. Ultimately, all three exited the house and waited for the fire department to arrive. No one else was at the house that night. Defendant's uncle testified that,

while they were waiting outside, defendant—unprovoked and unprompted—told him, "I know you think that I did it," referring to fire.

Captain Matthew Mansberger of the Lansing Fire Department was called to investigate the fire. At trial, he was qualified, without objection, as an expert in fire investigation. Mansberger testified that, during his investigation, he found no sign of smoking or the use of candles inside the home, and that defendant informed him that defendant did his smoking outside. Mansberger also did not find any indication that the electrical outlets, cords, appliances, or gas line identified during the investigation caused the fire. Based on his investigation, Mansberger determined that the fire originated underneath a desk in the basement and that none of the other items on or around the desk, such as an unplugged lamp, batteries, or a trashcan, served as the source of the fire. Mansberger also noted that there was an unused fire extinguisher in the bedroom area of the basement. And because he ruled out every possible ignition source or heat source in the area that could have possibly caused the fire, Mansberger concluded that the fire was incendiary—that is, intentionally set. More specifically, Mansberger determined that the fire was caused by a human hand using an "open flame device" that had been removed from the area of the fire's origin. Mansberger was also able to determine that a "combustible fuel" was used to start the fire, but was unable to identify exactly what such material was used.

Mansberger also testified about his observations of defendant's behavior at the scene. For instance, he witnessed defendant put his fist against his father's face and, in a threatening manner, say something like, "You're gonna blame this on me. You better not pin this on me." Mansberger testified that he heard defendant talk about beating his father and fighting his uncle. Mansberger also overheard defendant make comments about a gun, which prompted Mansberger to contact the police because he did not feel safe with defendant at the scene. Mansberger further testified that police found a lighter in defendant's pocket when they searched him, and that defendant informed Mansberger that he had been going back and forth between the basement and outside during the evening of the fire.

In addition to Mansberger, the prosecution called Lansing Police Officer Jonathan Bynum as a witness. Before Bynum took the stand, and outside the presence of the jury, defendant objected to Bynum testifying about statements defendant had made in Bynum's presence during an apparent "mental health episode" shortly after the fire.[1] According to defendant, testimony about these statements, in which defendant was "rambling on and on about national events, Wisconsin, Kyle Rittenhouse, and so forth,"[2] would be irrelevant and unduly prejudicial. In

---

[1] As defense counsel explained during his objection, on the night of the fire, defendant was subject to a "PRT" (presumably, "person requiring treatment," although the acronym is not explained on the record) and taken to a hospital. Officer Bynum was called to the hospital to assist. The prosecution made clear that the fact that defendant was subject to a PRT and that he made the statements at issue at a hospital would not be disclosed to the jury.

[2] During a protest over police violence against people of color in the summer of 2020 in Kenosha, Wisconsin, Kyle Rittenhouse, then 17 years old, killed two men and wounded a third using an AR-style semi-automatic rifle. Prosecutors charged Rittenhouse with homicide, attempted homicide,

response, the prosecution explained that Bynum would testify that defendant was making comments about Kyle Rittenhouse and Kenosha, Wisconsin. These were statements of violence, the prosecution reasoned, which were in line with other violent comments defendant had made at the scene about his father and uncle and which spoke to his state of mind and intent to commit violence via arson. The trial court agreed with the prosecution that such statements "would go to defendant's intent or state of mind," which was relevant to the prosecution's theory of motive—that defendant set the fire because he was angry at his father and uncle about his eviction. And though the trial court agreed that defendant's statements were prejudicial, it did not believe they were unduly prejudicial. Accordingly, the court ruled that defendant's statements would be admissible "as long as they go to [his] intent and state of mind with respect to the motive here of the alleged arson."

On direct examination, Bynum testified that, when he "came into contact with" defendant, defendant's "demeanor" was "kinda sporadic," in that "[h]e would say various things and ask random questions that kinda had nothing to do with anything." Bynum confirmed that some of defendant's comments "caused [Bynum] concern": namely, defendant "made several comments about Kyle Rittenhouse; Kenosha, Wisconsin"; defendant "asked [Bynum] and several other people what their favorite N-word was"; and defendant "talked about how the last time he had dealt with police officers he asked if they could shoot him or something of that nature." Bynum also recalled that defendant "talked about how he was evicted from where he was currently staying at" and made comments indicating that he thought he would be blamed for the fire. Bynum further described defendant's "demeanor" as "[u]ncooperative," elaborating that defendant initially was passively uncooperative, that this "kinda continued to escalate to more severely uncooperative," and that defendant "had to be strapped down to the bed."

Once Bynum concluded his testimony, the prosecution rested. Defendant then unsuccessfully moved for a directed verdict, waived his right to testify, and declined to call any witnesses. After 90 minutes of deliberation, the jury found defendant guilty as charged.

At sentencing, the prosecution argued, as relevant here, that the trial court should score OV 1 and OV 2 at 20 points and 15 points, respectively. As to OV 1, the prosecution argued that a score of 20 points was warranted because of defendant's use of an incendiary device. Defendant countered that there was no evidence that he used an incendiary device as that term is statutorily defined, much less that he used such a device as a weapon against his father and uncle. The prosecution responded that Mansberger had testified to the use of a combustible fuel to start that fire, and that this fuel served as the incendiary device that defendant used against his father and uncle. The parties made parallel arguments regarding OV 2. The trial court agreed with the prosecution that there was sufficient evidence to conclude that defendant used an incendiary device as a weapon against his father and uncle, and that OVs 1 and 2 should be scored as requested. The increase in OV scoring raised defendant's recommended minimum sentencing guidelines range to

---

and recklessly endangering safety. On November 19, 2021, a jury acquitted Rittenhouse on all charges. Michael Tarm, Scott Bauer, & Amy Forliti, *Kyle Rittenhouse Found Not Guilty of All Counts in Kenosha Shooting* <https://www.pbs.org/newshour/nation/kyle-rittenhouse-found-not-guilty-of-all-counts-in-kenosha-shooting> (accessed May 14, 2026).

45 to 75 months' imprisonment,[3] and the trial court imposed a sentence of 45 to 240 months. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence marshaled at trial to support his conviction for second-degree arson. We disagree.

We review *de novo* challenges to the sufficiency of the evidence presented at trial. *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). "In evaluating a claim regarding the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Prude*, 513 Mich 377, 385; 15 NW3d 249 (2024) (cleaned up). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of a crime, and it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences." *People v Walker*, 330 Mich App 378, 382; 948 NW2d 122 (2019) (cleaned up). "[A] reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted). This Court therefore defers "to the fact-finder that weighed the evidence to determine the criminal defendant was guilty beyond a reasonable doubt." *Prude*, 513 Mich at 385.[4]

"[A] person who willfully or maliciously burns, damages, or destroys by fire or explosive a dwelling, regardless of whether it is occupied, unoccupied, or vacant at the time of the fire or explosion, or its contents, is guilty of second degree arson." MCL 750.73(1). The offense requires proof beyond a reasonable doubt of an intentional criminal act by the defendant. See, e.g., *People v Williams*, 114 Mich App 186, 193; 138 NW2d 671 (1982); M Crim JI 31.1. According to defendant, there was insufficient evidence to prove (1) that the fire at issue was intentionally set, and (2) that he was the one who set it.

Defendant's argument lacks merit. To start, there was sufficient evidence to prove that the fire was intentionally set. Mansberger testified that, after eliminating all other possible causes of the fire, he concluded that the fire was deliberately set by a human hand using an open flame device and a combustible fuel. No evidence or testimony was presented to the contrary. Defendant impugns the adequacy of Mansberger's testimony, pointing out that Mansberger only came to his conclusion via process of elimination, did not collect any physical evidence, could not identify the

---

[3] The trial court also agreed with the prosecution that OV 9 should be scored at 10 points. Defendant objected to that scoring of OV 9 below, but he does not challenge it on appeal.

[4] In advancing this claim of error, defendant also suggests that the trial court should have granted his motion for directed verdict once the prosecution rested its case. Defendant's motion was based on the insufficiency of the evidence presented at trial to sustain a conviction for arson, and the standards governing our review of that argument are substantively the same as those recited above. See *People v Hampton*, 407 Mich 354, 366-368; 285 NW2d 284 (1979); *People v Powell*, 278 Mich App 318, 320 n 1; 750 NW2d 607 (2008).

first material ignited, and was unable to pinpoint the exact location the fire started in the desk. He also emphasizes that Mansberger agreed that an ember from a cigarette could start a fire.[5] In other words, defendant essentially argues that Mansberger's conclusions are entitled to little weight because there were, theoretically, many possible origins of the fire. But questions of weight and credibility are matters for the factfinder to determine, not this Court. *Oros*, 502 Mich at 239. Instead, when reviewing a sufficiency challenge on appeal, this Court views all evidence presented at trial in the light most favorable to the prosecution, draws all reasonable inferences in support of the jury verdict, and defers to the weight the jury, as the factfinder, gave to that evidence. *Id.*; *Prude*, 513 Mich at 385. Applying these standards, the evidence presented at trial was sufficient to permit a reasonable jury to conclude, beyond a reasonable doubt, that the fire was intentionally set and not the result of some accidental or natural cause.

Likewise, there was sufficient evidence to prove that defendant was the culprit. The prosecution presented robust circumstantial evidence establishing that only defendant had the means, motive, and opportunity to commit the arson. As for means, the evidence showed that defendant had a lighter in his possession at the scene, and Mansberger testified that an open flame device—such as that lighter—was used to start the fire and was then removed from the area where the fire started. The evidence also showed that defendant was the first to know of the fire and that, although there was a fire extinguisher in the basement, it went unused. Regarding opportunity, the evidence showed that the fire started in the basement where defendant slept, the only other two people in the house were asleep at the time the fire started, and that defendant had told Mansberger he had been going between the basement and outside the house on the night of the fire, indicating he was the only one awake. And as for motive, defendant's father and uncle testified that defendant was "probably frustrated" with the impending eviction. Defendant's uncle and Mansberger each testified to defendant's unprovoked and agitated assertions that his father and uncle thought he was responsible for the fire. Mansberger also witnessed defendant place a fist to his father's head and overheard defendant talk about beating his father and uncle. And it was defendant's mention of a gun that prompted Mansberger to contact the police. Taken together, this circumstantial evidence provided strong support for the conclusion that defendant intentionally set the fire, with his father and uncle in the house, out of anger over and as retribution for his forthcoming eviction.

Relying on this Court's decision in *People v Lindsey*, 83 Mich App 354; 268 NW2d 41 (1978), defendant posits that the prosecution's case against him was "purely speculative." But *Lindsey* is readily distinguishable. In that case, this Court determined there was insufficient evidence to prove beyond a reasonable doubt that the defendant committed arson because the evidence "indicate[d] mere opportunity to commit arson" with no "indication of a motive" on the defendant's part, leaving it "equally as plausible" that "the fire was negligently started by [the] defendant or [the] defendant's wife or [the] defendant's friend." *Id.* at 355. As discussed, the

---

[5] It is worth noting, however, that defense counsel only asked Mansberger whether a cigarette ember could start "a fire" and not the particular fire that served as the basis for defendant's conviction. And Mansberger testified that he did not find any indicia of smoking—matches, ashtrays, cigarette butts—in the basement where the fire occurred.

evidence in this case was by no means similarly lacking and instead provided ample support for the conclusion that defendant was the one who started the fire and that he had a motive to do so.

Equally unavailing is defendant's argument that the prosecution's witnesses amounted to nothing more than a "parade of character assassination," with the testimony of his father and uncle showing not motive and opportunity but instead "their disdain for" defendant and their "intent to rid him from the premises." That the testimony of the prosecution's witnesses may permit other inferences, however, does not mean it was insufficient to support a conviction. *Walker*, 330 Mich App at 382; see also *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Viewing the evidence presented at trial in the light most favorable to the prosecution and drawing all reasonable inferences in support of the jury's verdict—as we must—there was more than sufficient evidence to permit a reasonable jury to conclude beyond a reasonable doubt that defendant intentionally started the fire and was guilty of second-degree arson.

## III. ADMISSIBILITY OF EVIDENCE

Defendant next argues that the trial court erroneously admitted Bynum's testimony regarding certain of defendant's statements, thereby denying him a fair trial. According to defendant, this irrelevant and unduly prejudicial testimony depicted him as a deranged racist with prior police contact who was obsessed with a person accused of mass murder, and the error in its admission was not harmless. While we agree that at least some of Bynum's testimony was inadmissible, we disagree that defendant has shown entitlement to relief on its basis.

"The decision whether evidence is admissible is within the trial court's discretion and should only be reversed where there is a clear abuse of discretion." *People v Nelson*, ___ Mich___; ___ NW3d ___ (2025) (Docket No. 166297); slip op at 7 (quotations marks and citation omitted). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id.* (quotation marks and citation omitted). "Questions of law underlying evidentiary rulings are reviewed de novo. *People v Lemons*, 514 Mich 485, 503; 22 NW3d 42 (2024) (citation omitted). "A trial court necessarily abuses its discretion when it makes an error of law." *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

Because defendant's claimed error is nonconstitutional, he must show that the error was not harmless in order to obtain relief. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). When examining harmlessness, this Court looks to "the nature of the error and assess[es] its effect in light of the weight and strength of the untainted evidence." *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009), citing MCL 769.26; see also MCR 2.613(A). If defendant fails to show, "after an examination of the entire cause, that it is more probable than not that the error was outcome determinative," then relief is not warranted. *People v Phillips*, 469 Mich 390, 396-397; 666 NW2d 657 (2003) (quotation marks and citation omitted).

We agree in part with defendant's challenge to the admissibility of Bynum's testimony. Evidence is relevant when it has "any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." MRE 401. Relevant evidence is generally admissible except under certain circumstances, MRE 402, including when "its probative value is substantially outweighed by a danger" of "unfair prejudice, confusing the issues, misleading the jury, wasting time, or needlessly presenting cumulative

evidence," MRE 403. When balancing the probative value of the evidence against its prejudicial effect, courts consider several factors, including

> the necessary time to present the evidence, whether the evidence is needlessly cumulative, how directly probative the evidence is, how necessary the fact to be proven by the evidence is, whether the evidence would mislead the jury, and whether there is an alternative and less potentially harmful way to prove the fact. [*People v Sharpe*, 502 Mich 313, 331-332; 918 NW2d 504 (2018) (citation omitted).]

"Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010) (quotation marks and citation omitted).

As noted, defendant objected at trial to Bynum testifying about defendant's statements, asserting it would be irrelevant and unduly prejudicial. The prosecution, focusing (like defendant) on defendant's remarks about Kyle Rittenhouse and Kenosha, Wisconsin, argued that Bynum's testimony would speak to defendant's violent state of mind and, by extension, his intent to set the fire to harm his father and uncle. The trial court agreed with the prosecution, reasoning that as long as the statements Bynum testified about "go to . . . defendant's intent and state of mind with respect to the motive here of the alleged arson, then they would be admissible."

We do not see error in this general ruling from the trial court, or in the court's admission of defendant's statements about Rittenhouse and Kenosha. Relevance requires only that the evidence have "*any* tendency to make a fact [of consequence] more or less probable than it would be without the evidence." MRE 401 (emphasis added). Statements of violence—made shortly after the alleged offense—evince a violent state of mind that tends to make it more probable that defendant intentionally started the fire out of anger toward his father and uncle. And even though all relevant evidence admitted against defendant is prejudicial, that does not mean it is *unfairly* prejudicial. *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005). Bynum's testimony regarding defendant's statements of violence were probative of defendant's state of mind as well as his intent, an essential element of the crime with which he was charged. Defendant maintains that Bynum's testimony painted him as "deranged," "unstable," and "obsessed with a person accused of mass murder," but neither Bynum nor anyone else at trial described defendant in such terms or suggested anything more should be drawn from the statements beyond defendant's state of mind and intent as to the alleged arson. Defendant has failed to show that the probative value of his statements regarding Rittenhouse and Kenosha was substantially outweighed by their danger of unfair prejudice, let alone that the trial court abused its discretion by concluding otherwise. *Nelson*, ___ Mich at ___; slip op at 7.

That said, Bynum testified to statements by defendant that went beyond Rittenhouse and Kenosha, and we agree with defendant that such testimony did not fall within the proper scope of the trial court's admissibility ruling. In particular, it is not apparent how Bynum's testimony about defendant's racist statements or his statements regarding prior contact with the police was relevant to defendant's "intent and state of mind with respect to the motive" of the alleged arson. And indeed, the prosecution itself did not refer to such statements in explaining to the court why it should admit Bynum's testimony.

To secure relief for this error, however, defendant must show that it is more probable than not that the error was outcome determinative. *Phillips*, 469 Mich at 396-397. Defendant has made no such showing here. Bynum's testimony was relatively brief, and the only other time defendant's statements to Bynum were mentioned at trial was a single, passing reference during the prosecution's closing argument to defendant "speaking about Kenosha, Wisconsin and Kyle Rittenhouse and implications to weapons and to violence." Furthermore, there was ample unobjectionable and untainted evidence of defendant's guilt in the record—including evidence of defendant's violent state of mind, such as Mansberger's testimony that defendant was agitated and combative with his father and uncle at the scene. In light of the entirety of evidence presented at trial, defendant has not shown that, but for the admission of Bynum's testimony, it is more probable than not that the outcome of his trial would have been different. Accordingly, to the extent the trial court erred in admitting Officer Bynum's testimony into evidence, any such error was harmless.

## IV. OV SCORING

Defendant's final claim on appeal is that the trial court erroneously scored OVs 1 and 2 in imposing his sentence—an error which altered his recommended minimum sentencing guidelines range and thus entitles him to resentencing. We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded in part on other grounds by statute as stated in *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* "When the guidelines range is incorrectly calculated and that error alters the range, a defendant is entitled to resentencing." *People v Dixon*, 509 Mich 170, 177; 983 NW2d 385 (2022) (citation omitted).

For the trial court to score OV 1, there must have been the aggravated use of a weapon in the commission of the offense. MCL 777.31(1). When "[t]he victim was subjected or exposed to a[n] . . . incendiary device," OV 1 is scored at 20 points. MCL 777.31(1)(b). A "victim" under this provision is defined as "[e]ach person who was placed in danger of injury or loss of life . . . ." MCL 777.31(2)(a). Similarly, OV 2 is scored at 15 points when "[t]he offender possessed or used an incendiary device . . . ." MCL 777.32(1)(b). For both OVs 1 and 2, an "incendiary device" includes "gasoline or *any other flammable substance*, a blowtorch, fire bomb, Molotov cocktail, or other similar device." MCL 777.31(3)(b) (emphasis added); MCL 777.32(3)(d) (emphasis added).

Defendant argues that there is no evidence that he used an incendiary device as that term is statutorily defined, let alone that he "subjected or exposed" his father and uncle to such a device. Rather, he contends that the fire itself was the instrumentality of the damage, and because the lighting of a fire is subsumed within the gravamen of the offense—arson—it cannot be used for scoring OVs 1 and 2. As an initial matter, defendant offers no authority in support of this subsummation argument, and our Supreme Court has held that, "absent an express prohibition, courts may consider conduct inherent in a crime when scoring offense variables." *Hardy*, 494

Mich at 442. No such express prohibition is applicable here.[6] And in scoring OVs 1 and 2, the trial court found that a preponderance of the evidence showed defendant's possession and use of an incendiary device—namely, that defendant lit combustible fuel to start the fire, as Mansberger testified. Defendant has not explained how this evidence was insufficient to satisfy the statutory definition of "incendiary device," particularly given its express inclusion of "any other flammable substance." MCL 777.31(3)(b); MCL 777.32(3)(d).

Nor has defendant shown the trial court erred in concluding that he "subjected or exposed" the victims of his crime—his father and uncle—to an incendiary device. Defendant principally relies on *People v Ball*, 297 Mich App 121; 823 NW2d 150 (2012). In that case, the defendant delivered half a gram of heroin to the victim, who later overdosed; the defendant pleaded guilty to manslaughter and unlawful delivery of less than 50 grams of heroin. *Id.* at 122. The trial court scored OV 1 at 20 points because heroin qualified as a "chemical substance" under the statute and the defendant exposed the victim to that substance. *Id.* at 123. This Court reversed, reasoning that, while heroin could be used as weapon—such as when it is forcibly injected into an unwilling victim to cause a lethal overdose—it was not so used in that case, which simply involved "an ordinary, albeit illegal, consensual drug transaction." *Id.* at 125-126; see also *People v Crabtree*, 493 Mich 878; 821 NW2d 678 (2012) (citing *Ball* and reversing this Court's affirmance of the scoring of OVs 1 and 2 for the possession and manufacture of methamphetamine).

Defendant argues that, just as in *Ball* and *Crabtree*, there was no evidence that he used an incendiary device as weapon against anyone, and the mere fact that a fire caused damage—like the mere fact that the ingestion of drugs caused harm—is insufficient for purposes of OVs 1 and 2. Defendant's analogy, however, is inapt, as made clear by our Supreme Court's affirmance of this Court's decisions in *People v Naccarato*, 498 Mich 918; 871 NW2d 195 (2015) (*Naccarato III*). The defendant in *Naccarato* used gasoline to start a fire in an apartment complex and pleaded nolo contendere to, *inter alia*, one count of arson of personal property. On appeal, a panel of this Court held that OV 1 should be scored as 20 points because the victim was subjected or exposed to an incendiary device—the gasoline—which was used to start the fire. *People v Naccarato*, unpublished per curiam opinion of the Court of Appeals, issued October 4, 2012 (Docket No. 305222), pp 1, 3 (*Naccarato I*). The panel remanded the case for resentencing, but on remand, the trial court, relying on *Ball*, did not adhere to the holding in *Naccarato I*. *People v Naccarato*, unpublished per curiam opinion of the Court of Appeals, issued June 16, 2015 (Docket No. 320571), p 1, 3 (*Naccarato II*). When the matter returned on appeal, the *Naccarato II* panel reaffirmed that an OV 1 scoring of 20 points was proper based on the defendant's intentional use of gasoline to start a fire that placed others in danger—and, in doing so, expressly determined that *Ball* and similar cases "involving the delivery of narcotics or ingredients for their manufacture" are "plainly distinguishable." *Id.* at 3. As to OV 2, the *Nacarrato II* panel likewise determined that the defendant's use and possession of the gasoline meant that cases like *Ball* were inapposite and that a scoring of 15 points was appropriate. *Id.* at 4-6. Our Supreme Court then affirmed, explaining that this Court, "in the course of issuing two opinions in this case, correctly held that

---

[6] The *Hardy* Court noted that OV 1 includes one such "express prohibition." 494 Mich at 442 n 33, citing MCL 777.31(2)(e). This provision is not relevant to defendant's appeal and has no bearing on our analysis.

Offense Variables 1 and 2 should have been scored at 20 points and 15 points, respectively, and that the circuit court erred by failing to do so." *Naccarato III*, 498 Mich at 918.

Defendant does not address *Naccarato*, and we see no reason why its reasoning would not apply in this case. Here, an incendiary device—the combustible fuel, or "other flammable substance"—was used to start the fire, just as gasoline was used to start the fire in *Naccarato*. And just as the victims in *Naccarato* were "subjected or exposed to a harmful . . . incendiary device" as a result of that fire, so too were defendant's father and uncle "subjected or exposed to" the fire which defendant started while they were sleeping in the house and which they each tried to extinguish. Accordingly, defendant has failed to show that the trial court erred in its scoring of OVs 1 and 2.

Affirmed.

/s/ Daniel S. Korobkin
/s/ Michael J. Riordan
/s/ Philip P. Mariani

-10-